# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

LAURA KAY KLING,

               Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

               Defendant.

No. C15-3145-LTS

**MEMORANDUM
OPINION AND ORDER**

_____

      Plaintiff Laura Kay Kling seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Kling contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be affirmed.


## I.     BACKGROUND

      Kling was born in 1967 and completed school through the eighth grade. AR 48-49. She has no work that qualifies as past relevant work. AR 676. Kling applied for SSI on March 12, 2009, alleging disability since February 27, 2009. AR 231. Her claim was denied initially and on reconsideration. AR 125-27, 175-79, 185-88. Kling then requested a hearing before an Administrative Law Judge (ALJ). AR 189-91.

      On June 15, 2010, ALJ Jo Ann Draper held a hearing and on August 12, 2010, issued a decision denying Kling's application. AR 19-38. Kling sought review by the

Appeals Council.  On December 7, 2011, the Appeals Council denied her request for review.  AR 1-3.

On January 30, 2012, Kling filed a complaint in this court seeking review of the ALJ's decision.  On February 22, 2013, United States District Judge Mark W. Bennett reversed and remanded the decision with instructions to "(1) re-weigh the medical opinion evidence in accordance with the commissioner's regulations; (2) provide good reasons for the weight ultimately given to Dr. Sahai's medical opinions; and (3) determine what effect, if any, this analysis has on the ALJ's RFC determination and other findings." *Kling v. Colvin*, No. C12-3007, 2013 WL 657639, at *2 (N.D. Iowa Feb. 22, 2013); AR 794-822.

Meanwhile, Kling filed a new SSI application on August 26, 2010, in which she alleged disability since August 13, 2010.  Supplemental AR (SAR) 239-42.  The second application was denied initially and on reconsideration.  SAR 103-06, 120-23.  Kling then requested a hearing before an ALJ.  SAR 129-30.  On June 19, 2012, ALJ Thomas M. Donahue held a hearing and on July 13, 2012, issued a decision denying Kling's application.  SAR 78-91.  Kling sought review by the Appeals Council.  SAR 172-75.

After Judge Bennett issued his remand order, the Appeals Council consolidated the March 2009 and August 2010 claims and remanded them to the ALJ for further proceedings.  AR 879-80.  ALJ Julie Bruntz conducted an initial hearing on June 5, 2014, and a supplemental hearing on July 24, 2014.  AR 710-60.  On August 11, 2014, the ALJ issued a decision denying disability.  AR 659-78.  Kling sought review by the Appeals Council.  On September 11, 2015, the Appeals Council denied her request for review.  AR 645-48.  Thus the ALJ's August 11, 2014, decision became the final decision of the Commissioner.    AR 646; *see also* 20 C.F.R. § 416.1481.

On October 1, 2015, Kling filed a complaint with this court seeking review of the ALJ's decision.  The parties have briefed the issues and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the

claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; see 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform

exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use

is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 416.935.

## III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant has not engaged in substantial gainful activity since March 12, 2009, the application date (20 CFR 416.971 *et seq.*).

(2)    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, depression, and colitis, status-post sepsis (20 CFR 416.920(c)).

(3)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4)    After careful consideration of the entire record the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) such that she could lift or carry ten pounds occasionally and five pounds frequently. Standing would be limited to two hours a day. The claimant would need to be able to change positions approximately every sixty minutes. The claimant could stay in the work area but would just need to get up to rest and stretch her back. She should avoid constant repetitive handling and fingering with both hands. She is left hand dominant. She should never climb ladders, ropes, or scaffolds. She would be limited to simple, routine tasks. She would require a job with no contact with the general public, and only occasional contact with coworkers and supervisors.

(5)    The claimant has no past relevant work (20 CFR 416.965).

(6)     The claimant was born on February 27, 1967 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

(7)     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

(8)     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

(9)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(10)    The claimant has not been under a disability, as defined in the Social Security Act, since March 12, 2009, the date the application was filed (20 CFR 416.920(g)).


## IV.     THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

# V.    DISCUSSION

As set forth above, the ALJ found that Kling is not disabled because she can perform jobs that exist in significant numbers in the national economy.  AR 677.  Kling contends the ALJ's decision must be reversed for the following reasons:  (1) the ALJ disregarded this court's remand instructions and (2) the ALJ formulated an RFC that is not supported by substantial evidence.  Doc. No. 18 at 1.  Kling contends that remand for an immediate award of benefits is appropriate.

## A.    Compliance with the Remand Order

As noted above, Judge Bennett remanded Kling's 2009 claim to the Commissioner with instructions to "(1) re-weigh the medical opinion evidence in accordance with the commissioner's regulations; (2) provide good reasons for the weight ultimately given to Dr. Sahai's medical opinions; and (3) determine what effect, if any, this analysis has on the ALJ's RFC determination and other findings."  AR 794-822.  Kling contends that the ALJ failed to comply with these remand instructions.[1]  Specifically, she argues that the ALJ did not provide good reasons for the weight given to the opinions of Dr. Sahai, Dr. Porter and Kris Marvin, LISW.  The Commissioner argues that the ALJ properly evaluated the opinion evidence and complied with the remand order by providing good reasons for discounting portions of the treating source opinions.

_____

[1] Kling also contends that the ALJ violated the Commissioner's HALLEX (Hearings, Appeals and Litigation) manual by issuing a hearing notice that did not make reference to the issues itemized in this court's remand order.  Doc. No. 18 at 6-7.  Even assuming the ALJ did not follow all HALLEX requirements with regard to the hearing notice, such a violation does not amount to reversible error.  _See, e.g., Heitz v. Astrue,_ No. 09-2019, 2010 WL 1521306, at *17 (N.D. Iowa Apr. 15, 2010) ("In the absence of a ruling from the Eighth Circuit Court of Appeals, coupled with the weight of authority that HALLEX does not create judicially-enforceable rights, the court declines to find that an ALJ's failure to follow HALLEX is reversible error.").  I further note that Kling has identified no prejudice resulting from the alleged violation.

### 1. Applicable Standards

#### a. Compliance with Remand Orders

"Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). The Eighth Circuit has noted that the district court is best able to determine whether its previous order has been violated. *See Steahr v. Apfel*, 151 F.3d 1124, 1126 (8th Cir. 1998) (deferring to the district court's interpretation of its remand order).

#### b. Consideration of Medical Opinion Evidence

The Social Security regulations state, in relevant part:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(c)(2) [emphasis added]. Thus, a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby*

*v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937.

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation." 20 C.F.R § 416.927(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). A treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner*, 499 F.3d at 848 (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Some medical evidence 'must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "Unless a treating source's opinion

is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. 416.927(e)(2)(ii).

### 2.    *Summary of the Medical Evidence*

The record contains evidence from numerous sources, including (a) Sabhash Sahai M.D., (b) Joseph Latella, D.O., (c) Sarkis Kaspar, M.D., (d) Abhishake Kaapuraala, M.D., (e) Melanie K. Porter, Psy.D., (f) Kris Marvin, LISW, and (g) various state agency consultants including: Donald Shumate, D.O., James D. Wilson, M.D., Gary Cromer, M.D., Myrna Tashner, Ed.D., Dee Wright, Ph.D., and John Tedesco, Ph.D.

### a.    *Treating and examining sources*

**Dr. Sahai**.  Dr. Sahai, has been Kling's primary care physician since 1990.  AR 541.  He wrote a letter supporting a disability finding on March 9, 2009.  *Id.*  On June 24, 2010, he completed a treating medical source statement.  AR 640-44.  Dr. Sahai reported that Kling could sit for a maximum of one hour continuously before needing to walk about for less than 15 minutes, could sit for a maximum of 2 hours in a workday, could stand or walk continuously for 30 minutes after which she would need to lie down or recline for 30 minutes, could stand or walk for a maximum of 2 hours in a workday, would need to take extra breaks to rest and relieve pain for a total of 1 hour per workday. AR 640-41.  In the same statement, Dr. Sahai opined that Kling could cumulatively sit for 5 hours, stand or walk for one and a half hours and rest for one and a half hours in a work day.  AR 641.  Dr. Sahai noted that Kling could lift 10 pounds frequently and 20 pounds occasionally, she could stoop occasionally and would have some limitations in the use of her hands and arms.  AR 642.

Dr. Sahai opined that Kling has moderate restrictions on activities of daily living, moderate difficulties in maintaining social functioning and would have repeated episodes

of deterioration or decompensation in work. AR 643. He stated that Kling will not have good days and bad days because the condition was constant and would be absent from work more than four times a month. *Id.*

**Dr. Kaspar**. Dr. Kaspar performed an orthopedic evaluation on March 25, 2010. AR 607-14. Dr. Kaspar opined that the epidurals had managed pain and the fourth epidural provided excellent results, noting Kling was not experiencing pain at this visit. AR 608-10. Dr. Kaspar recommended continued epidurals and indicated spinal surgery as an option only if symptoms worsened. AR 610. Dr. Kaspar noted that her lumbar x-rays from March 25, 2010, showed no instability and a well-aligned spine. AR 609. At a follow-up evaluation on May 6, 2010, Dr. Kaspar stated that Kling's symptoms were tolerable as long as she did not overexert herself. SAR 346.

**Dr. Kaapuraala**. Dr. Kaapuraala completed a Report on Incapacity formatted as a checklist with no space for elaboration on May 20, 2013. AR 930-31. Dr. Kaapuraala reported a diagnosis of degenerative joint disease, depression and back pain. *Id.* He indicated that Kling requires continuous in-home care, is not able to care for children in the home, is not able to perform work of any kind and is unable to participate in classroom training or instruction. *Id.*

**Dr. Porter**. Dr. Porter, a consultative psychological examiner, saw Kling on two occasions, with the first being May 28, 2009. AR 544-50. At that time, Dr. Porter found that Kling's history and presentation are consistent with a diagnosis of depression, but opined that disturbances in mood were not likely to significantly impact her ability to remember and understand simple instructions, procedures and locations. AR 549. However, Dr. Porter found that Kling's ability to carry out instructions would be hindered, that she would require additional time to complete tasks and may need to have instructions repeated. *Id.* Dr. Porter stated that Kling's attendance is likely to be impacted by her symptoms and her ability to interact with supervisors and the public would vary depending on her feelings of acceptance. *Id.* Dr. Porter also found that

13

Kling's ability to interact with the public was extremely poor. *Id.* Dr. Porter reported a Global Assessment of Functioning (GAF) score of 45.[2] *Id.*

The second consultative exam occurred on January 6, 2011. SAR 406-15. Dr. Porter opined that Kling was likely to see the most impairment in her interactions with other people. SAR 415. Dr. Porter found that Kling was dressed appropriately, cooperative, oriented to person, place, time and situation, described her mood as depressed and spoke clearly and coherently. SAR 413. Dr. Porter opined that Kling was likely "to experience a high level of anxiety in social situations to the point that she more than likely would prematurely discontinue her employment and/or display a moderate level of impairment consistently utilizing good judgment or responding appropriately to change in the workplace." SAR 415. Additionally Dr. Porter found that Kling's mental impairments would not affect "her ability to remember and understand instructions, procedures, and locations nor does her ability to maintain attention and concentration and/or pace appear to be significantly impacted by her mental health." *Id.* Dr. Porter assigned a GAF score of 50 during this examination. *Id.*

**Dr. Latella**. Dr. Latella, a consultative physical examiner, saw Kling on May 26, 2009. AR 554-557. Dr. Latella found that although Kling did not drive a car she could ride as a passenger for a long time. AR 554. Dr. Latella opined that Kling could kneel, crawl and climb stairs. *Id.* Additionally, Dr. Latella performed range of motion testing and found decreased flexion due to Kling's ruptured disk and subsequent scarring, but also found her gait to be normal with no loss of sensation or motor components in

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF Score of 41-50 indicates the individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

any extremity.  AR 555.  Dr. Latella found that Kling had 30 degree forward flexion (on a possible 90-degree scale) and 20/25 degree extension.  AR 557.  Dr. Latella found that Kling's lateral flexion was decreased by 5 degrees both left and right.  *Id.*  Dr. Latella found that Kling exhibited good upper extremity muscle strength, scoring her 5/5 in both arms, and found 5/5 lower extremity strength in both legs.  AR 556-57.

### b.    *State Agency Physicians*

**Dr. Shumate**.  Dr. Shumate reviewed the medical evidence and provided a physical RFC assessment dated June 12, 2009.  AR 560-67.  Dr. Shumate found that Kling was occasionally able to lift or carry 20 pounds, frequently lift or carry 10 pounds, she could stand or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on pushing or pulling.  AR 560.  Dr. Shumate found that Kling could occasionally climb ramp/stairs, stoop, kneel, crouch and crawl, could frequently balance but never climb ladder/rope/scaffolds.    AR 562.    Dr. Shumate found no manipulative, visual, communicative or environmental limitations.  AR 563-64.  Additionally, Dr. Shumate opined that Kling's claimed symptoms are out of proportion to the objective findings. AR 565.

**Dr. Wilson**.  Dr. Wilson affirmed Dr. Shumate's RFC finding in a case analysis dated August 14, 2009.  AR 590.

**Dr. Cromer**.  Dr. Cromer reviewed the medical evidence and provided a physical RFC assessment dated November 9, 2010.  SAR 398-405.  He found that Kling was occasionally able to lift or carry 10 pounds, frequently lift less than 10 pounds, stand or walk (with normal breaks) for a total of 2 hours in an 8-hour workday, sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on pushing or pulling.  AR 399.  He also found that Kling could occasionally climb ramp/stairs, stoop,

kneel and crouch and never climb ladder/rope/scaffolds or crawl. AR 400. Dr. Cromer found no manipulative, visual, communicative or environmental limitations. AR 401.

**Dr. Tashner**. Dr. Tashner reviewed the medical records and provided a mental RFC assessment dated June 17, 2009. AR 570. Dr. Tashner found only moderate limitations in Kling's ability to carry out detailed instructions, complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 568-69. Dr. Tashner found Kling was not significantly limited in all other categories, including understanding and memory, sustained concentration and persistence, social interaction and adaptation. *Id*. Dr. Tashner opined that the "credibility of the allegations are somewhat eroded as there is no significant mental health treatment." *Id*.

Dr. Tashner provided a second mental RFC assessment dated January 19, 2011. SAR 416-18. Dr. Tashner opined that Kling was not significantly limited when remembering location or work-like procedures, remembering and carrying out very short or simple instructions, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, sustaining an ordinary routine without special supervision, making simple work-related decisions, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, awareness of normal hazards and taking appropriate precautions, traveling in unfamiliar places or using public transportation and setting realistic goals or making plans independently of others. *Id*. Dr. Tashner found moderate limitations in Kling's ability to work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or

request assistance, accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.*

**Dr. Wright**. Dr. Wright affirmed the mental RFC finding dated June 17, 2009, of Dr. Tashner in a case analysis dated August 27, 2009. AR 591.

**Dr. Tedesco**. Dr. Tedesco completed a case analysis and noted that upon reconsideration, Kling did not indicate any change in her mental health condition and as such, affirmed Dr. Tashner's 2011 evaluation.

### c.  *Other Source Evidence*

**Kris Marvin, LISW**. Marvin treated Kling for issues related to depression beginning in April 2012. AR 1057. He wrote two letters regarding Kling dated May 24, 2012, and June 10, 2014. SAR 502, AR 1057. The 2012 letter states that Kling suffers from depression, has attempted suicide, lives with an abusive husband, has severe back pain and suffers from anxiety all of which preclude her from holding a job. SAR 502. The 2014 letter states that Kling has attempted suicide and suffers from depression and anxiety which would make it impossible for her to maintain employment. AR 1057. The record contains no other evidence of treatment by Marvin.

### 3.  *Analysis*

As noted above, Kling contends that the ALJ failed to comply with the remand order and, specifically, that the ALJ did not provide good reasons for the weight given to the opinions of Dr. Sahai, Dr. Porter and Kris Marvin, LISW. For the reasons set forth below, I disagree.

**Dr. Sahai**. The ALJ found that Dr. Sahai's opinion deserved "little weight" because it was not consistent with objective medical evidence, contained internal inconsistencies and was not supported by the record as a whole. Dr. Sahai opined that

Kling's pain would cause her to miss work four times or more a month.  Contrary to this statement, Dr. Sahai stated that following an epidural injection she did "extremely well," and she requested another injection for pain in her hip, not her back.  AR 450.  After another injection, Dr. Sahai noted that Kling had done "very well" and did not have other problems following the injection.  AR 603.  Kling reported significant pain relief following injections and examination notes indicate she was doing well.  AR 603, 608-610, 622, 625, 932; SAR 347-48.

Moreover, when Dr. Kaspar examined Kling in March 2010, on a referral from Dr. Sahai, he concluded that surgical intervention was not indicated at that time.  AR 608-10.  Dr. Kaspar noted that Kling had four successful epidurals with Dr. Sahai, a well-aligned spine, was not experiencing bothersome pain that day, that she had an option for "right L5-S1 posterior decompression and disketomy surgery if she is worse" and that he would "leave it alone until the symptoms come back with a vengeance and if epidurals are no longer helping and medications."  *Id.*

Darin Eklund, P.A., noted a negative straight leg raise, minimal pain on percussion of the spinous process, x-rays unchanged and noted that Kling informed she had not really experienced radiation down the legs.  AR 488.  On April 18, 2011, a lumbar spine exam showed no acute fracture or subluxation, normal disk spaces and mild degenerative findings with no acute abnormality.  AR 500.  Following an x-ray of Kling's spine on March 25, 2010, Randy Anderson, M.D., found mild degenerative changes of the lumbar spine at L5-S1 with mild loss of intervertebral disc space and mild facet arthropathy without any other significant degenerative changes.  AR 613.  In addition, Dr. Latella found that Kling had no problem sitting and riding in a car for a long time.  AR 554.

In short, the ALJ was entitled to find that the medical evidence does not support limitations to the extent reported by Dr. Sahai.  Moreover, the ALJ correctly noted that Dr. Sahai's opinion contains internal inconsistencies.  Dr. Sahai stated that Kling could

sit for a total of only 2 hours in an 8-hour workday, but in the same report wrote that she could sit for a cumulative 5 hours in an 8-hour workday. AR 640-41. "Physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Here, Dr. Sahai's opinion was internally inconsistent.

Kling argues, however, that the MRI evidence of record supports a finding of disability. It is clear that the ALJ considered this evidence and nonetheless determined that Kling was not disabled. In 2006, an MRI revealed no abnormality of the thoracic spine. AR 440. A subsequent MRI showed degenerative disc disease, but no need for further intervention. AR 498. In 2008, an MRI revealed L5-S1 left paracentral inferior disc extrusion which displaces the traversing left S1 nerve root posteriorly and L3-4 and L4-5 small central disc protrusions. AR 530. An MRI in 2009 showed L5-S1 central subligamentous protrusion without effacing effects, facet arthropathy and L3-4, L4-5 annular bulge with annular inferior central annular tears. AR 637. Finally, an MRI in January 2010 revealed acute right eccentric L5-S1 disc protrusion extruded fragment extending caudally along the lateral recess level, impinging, compressing the exiting right S1 nerve root. AR 604. No canal or foraminal stenosis was found in this MRI. *Id.* Following the MRI, Kling received an epidural injection and Dr. Sahai noted she did extremely well. AR 601.

The ALJ specifically addressed the MRI results in her decision. AR 665-66. The ALJ noted that Dr. Latella did not offer any opinion as to functional limitations after reviewing the MRI findings. AR 666. The record contains evidence that Kling's back pain was managed by epidural injections, did not require surgery and that Kling did well following these injections. *See Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (finding no error when the record contained four MRI scans with each revealing a mild form of degenerative disc disease but none demonstrating nerve root impingement, along with records indicating that the claimant was not a candidate for surgery and claimant's

statements that injections alleviated his pain). I find no error in the ALJ's analysis of the MRI results or in her evaluation of Dr. Sahai's opinion.

**Dr. Porter**. Kling argues that the ALJ was required to either (a) adopt the entirety of Dr. Porter's opinions or (b) provide appropriate reasons for "cherry-picking" portions of Dr. Porter's opinion. I disagree. An ALJ is not required to accept or reject an entire medical opinion as a whole. *See, e.g.*, *Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991) (ALJ did not err in accepting only a portion of a medical opinion). Here I find the ALJ provided good reasons for the weight given to the various aspects of Dr. Porter's opinion.

As noted above, Dr. Porter performed two consultative psychological exams. The ALJ found that Dr. Porter's opinion was not supported by her objective findings and that Kling's mental findings were unremarkable. Dr. Porter initially opined that Kling's mood was not likely to impact her ability to remember or understand simple instructions, although she may need additional time to complete tasks and instructions repeated. AR 549. However, Dr. Porter found that Kling's attendance was likely going to be impacted by her mental impairments. *Id.* In her 2011 report, Dr. Porter found that Kling's mental impairment would no longer impact her ability to maintain concentration, persistence or pace. SAR 415. Dr. Porter additionally stated that Kling was most likely to be impacted in social situations or interacting with people in a work setting. *Id.*

The ALJ afforded Dr. Porter's opinion "some weight," concluding that although Dr. Porter found significant difficulties in social functioning, Kling's mental status exams were "unremarkable." AR 671, 548-49, SAR 413-15. The record reveals that Kling sought limited treatment for her mental health symptoms. *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (an ALJ may rely on failure to seek mental health treatment when determining the extent of mental health impairments). I agree with the ALJ that Kling's mental health exams were unremarkable. During an examination on April 11, 2012, Dr. Kaapuraala noted that Kling did not appear depressed, was not tearful and

maintained good speech and eye contact. AR 470. On March 17, 2014, Dr. Ehn found that Kling had no thoughts of suicide, guilt or hopelessness and was grossly oriented to person, place and time. AR 965-67. On June 19, 2013, Dr. Kaapuraala noted that Kling's depression was doing well, that Kling reported she was feeling very good and that she was doing well on Seratralyne. AR 1009-10.

Dr. Porter found Kling's judgment to be intact and noted that she may require additional time to complete simple tasks and certain instructions repeated, but did not find that Kling had no ability to complete simple, straight-forward tasks. AR 549. Additionally, Dr. Porter's later evaluation found Kling's mental status much improved. SAR 414-15. During this exam, Dr. Porter found that (a) Kling's memory was intact, (b) she had a clear, coherent and goal-directed thought process, (c) there was no evidence that Kling was experiencing auditory or visual hallucinations, (d) Kling had fair insight and adequate judgment, (e) that she denied current suicidal or homicidal ideation and (f) that she had intact impulse control. SAR 414.

"[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley*, 52 F.3d at 787. The ALJ was entitled to find that Dr. Porter's opinion was not entirely supported by the record as a whole.

**Kris Marvin**. As a licensed social worker, Marvin is an "other source," not an acceptable medical source. 20 C.F.R. § 416.902. The ALJ may rely on information from other sources to show the severity of an impairment and how it affects the ability to work. *See* 20 C.F.R. § 416.913(d). Here, the ALJ assigned little weight to Marvin's opinion because (a) he is not an acceptable source and (b) he opined that disability was warranted, thus addressing a finding that is reserved to the Commissioner. Additionally, the ALJ noted that Marvin's report contained no treatment notes from any therapy or counseling sessions. "[A] conclusory statement—that is, a statement not supported by medical diagnoses based on objective evidence—will not support a finding of disability."

*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (finding that a letter listing a diagnosis did not, without objective medical evidence, support a finding of disability). I find no error in the ALJ's assessment of Marvin's opinion.

In short, the ALJ did not ignore this court's remand instructions but, instead, properly reweighed the medical opinion evidence and provided good reasons, supported by substantial evidence, for the weight given to the various opinions.

## B.      *The RFC Determination*

Kling contends that the ALJ's RFC determination on remand was not based on substantial evidence because the ALJ did not give appropriate consideration to Kling's treating source evidence and the ALJ relied on non-treating sources in forming her RFC. The Commissioner disagrees.

### 1.      *Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental "limitations." 20 C.F.R. § 416.945(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966

(8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004). Although the RFC assessment is based on medical evidence, it is ultimately an administrative decision reserved to the Commissioner. *Cox*, 495 F.3d at 619-20 (8th Cir. 2007).

### 2. *The ALJ's Findings*

As noted above, the ALJ found that Kling had the RFC to perform sedentary work with the following limitations:

> Standing would be limited to two hours a day. The claimant would need to be able to change positions approximately every sixty minutes. The claimant could stay in the work area but would just need to get up to rest and stretch her back. She should avoid constant repetitive handling and fingering with both hands. She is left hand dominant. She should never climb ladders, ropes, or scaffolds. She would be limited to simple, routine tasks. She would require a job with no contact with the general public, and only occasional contact with coworkers and supervisors.

AR 663. In reaching this RFC determination, the ALJ gave little weight to the opinions of Dr. Sahai and Dr. Kaapuraala, both treating sources. AR 673-74. As discussed above, the ALJ's evaluation of Dr. Sahai's opinion is supported by substantial evidence. As for Dr. Kaapuraala, the ALJ afforded his opinion little weight on grounds that it (a) was inconsistent with objective evidence illustrating the success of epidural injections, (b) infringed on an area reserved to the Commissioner and (c) was submitted as a conclusory checklist without associated medical records. AR 673-74.

As noted above, the ALJ gave the opinion of Dr. Porter, an examining non-treating source, some weight, while giving little weight to the opinion of social worker Kris

Marvin. AR 671, 674. Finally, the ALJ gave great weight to the opinions of the state agency consultants, finding they were consistent with the record as a whole. AR 676. The ALJ also considered Kling's reported activities of daily living and function report. *Id.*

### 3. Analysis

Kling's argument is based, in large part, on the ALJ's evaluation of the medical opinion evidence. I have largely addressed, and rejected, Kling's complaints in that regard.[3] As for the other evidence of record, the ALJ found that contrary to Kling's complaints of disabling symptoms, x-rays showed only mild disc space narrowing at L5-S1, with spacing otherwise grossly maintained. AR 529. The ALJ additionally noted the MRI finding of disc desiccation at the L3-4, L4-5 and L5-S1, but no significant central canal or neural foraminal compromise. AR 490. Dr. Rinehart found that Kling's degenerative disk disease and degenerative facet disease inferiorly in the lumbar spine were stable. AR 443. Dr. Latella found that although Kling had decreased flexion, her gait was normal and she had no loss of sensation or motor components in any extremity. AR 555. Dr. Latella also found Kling had good grip strength, good upper extremity strength and 5/5 lower extremity muscle strength. AR 556-57. This evidence supports the ALJ's physical RFC findings.

As for Kling's mental RFC, the ALJ correctly noted that while Kling has been diagnosed with depression, the record contains no indication that she sought or received regular treatment from a psychiatrist or psychologist. AR 669. The ALJ also noted that the available treatment records, including psychiatric treatment in April 2012 for complaints of situational stressors and an attempted overdose, do not reflect severe,

---

[3] With regard to Dr. Kaapuraala, I find that the ALJ's reasons for discrediting his opinion, which I summarized in the previous subsection, are good reasons supported by substantial evidence in the record. *See* AR 673-74.

ongoing symptoms.  AR 671-72, 675-76.  Finally, the ALJ discussed Kling's credibility, concluding that "the record does not fully support the severity of the claimant's allegations."  AR 675.  Among other things, the ALJ noted that Kling's function report indicates that she cares for her dependent son, fixes meals, does laundry, cares for the family pet, talks on the phone, spends time with family, shops in stores and performs her own personal cares.  AR 676 (citing AR 273-80).  I find no error in the ALJ's assessment of Kling's mental RFC.

In short, I find that the ALJ's RFC findings are supported by "some medical evidence" and fall within the permissible "zone of choice" based on the record as a whole. *See Culbertson*, 30 F.3d at 939.  As such, there is no basis to disturb those findings.

## VI.   CONCLUSION

After review of the entire record, and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Kling was not disabled within the meaning of the Act is supported by substantial evidence in the record.  Accordingly the decision of the Commissioner is **affirmed**.  Judgement shall enter in favor of the Commissioner and against Kling.

**IT IS SO ORDERED.**

**DATED** this 19th day of August, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE